IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL S. OWL-FEATHER GORBEY,

   Plaintiff,

v.

DR. MOHAMED MUBAREK,[1]
THOMAS GERA, P.A.,
VANMETER,
STEVEN EIRICH,
HAMELTON,
THE UNITED STATES,

   Defendants.

Civil Action No.: RDB-19-220

**MEMORANDUM OPINION**

      This matter is before the Court for consideration of whether the complaint filed by Plaintiff Michael Gorbey adequately states an imminent danger of physical harm as required by 28 U.S.C. § 1915(g). Defendants, all of whom are employed by the Federal Bureau of Prisons (FBOP) and work at Federal Correctional Institution-Cumberland (FCI-Cumberland), assert that the complaint fails to satisfy the standard and additionally allege they are entitled to summary judgment or dismissal of the complaint. ECF 18. Gorbey opposes the pending Motion to Dismiss or for Summary Judgment on the grounds that it extends beyond the issue of imminent danger, seeks discovery in aid of establishing his claim of imminent danger, and moves to stay the proceedings and for sanctions. ECF 22, 25, 28, 32 & 33. In addition, Gorbey moves for reconsideration (ECF 27) asserting that there must be "imminent danger proceedings" prior to consideration of the merits of his claims and moves for leave to proceed in forma pauperis (ECF 29). The matters pending have been fully briefed; there is no need for an evidentiary hearing. *See* Local Rule 105.6 (D. Md.

---

[1]     The Clerk shall correct the spelling of Defendants' full names on the docket.

2018). For the reasons stated below, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted and Gorbey's pending motions denied.

## BACKGROUND

Gorbey is a FBOP inmate formerly confined to FCI-Cumberland[2] for service of a 21 year sentence imposed by the Superior Court for the District of Columbia. ECF 18-2 at 3, ¶4. During the course of his incarceration Gorbey has accumulated approximately eleven strikes under 28 U.S.C. § 1915(e) and (g). *See Gorbey v. U.S.A., et al.*, Civ. Action 1:08cv332 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv334 (D. Md. 2008), *Gorbey v. U.S. Military, et al.*, Civ. Action 1:08cv339 (D. Md. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 2:09cv313 (S.D. W.Va. 2009), *Gorbey v. U.S.A., et al.*, 1:09cv262 (D. D.C. 2009), *Gorbey v. U.S.A., et al.*, Civil Action 2:08cv121 (N.D. W.Va. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv649 (D. D.C. 2008), *Gorbey v. U.S.A., et al.*, Civil Action 1:08cv650 (D. D.C. 2008), *Gorbey v. District of Columbia, et al.*, Civil Action 1:09cv261 (D. D.C. 2009), *Gorbey v. District of Columbia*, Civil Action 1:10cv1751 (D. D.C. 2010), *Gorbey v. State of Virginia, et al.*, Civil Action 2:11cv164 (E.D. Va. 2011). Because of that history, Gorbey must demonstrate an imminent threat of physical harm before a suit for damages filed in this Court may proceed without prepayment of the $400 civil filing fee. *See* 28 U.S.C. §1915(g).

The complaint in the instant case concerns Gorbey's claim that: (1) he has glaucoma and the medication provided to treat it caused side effects that were a known risk at the time they were prescribed (ECF 8 at 2-3); (2) due to a shoulder injury involving repeated dislocations of his shoulder, he requires a cuff-in-front medical order that has been denied (ECF 1 at 3; ECF 8 at 5); (3) he is hypoglycemic and requires medically-ordered additional food to avoid serious symptoms

---

[2] While this case has been pending Gorbey was transferred to a federal facility in South Carolina.

such as fainting and severe chest pains (ECF 8 at 6-7); and (4) his administrative remedy complaints regarding staff misconduct that places him in danger of assault by another inmate are ignored (ECF 8 at 7). The Court directed counsel to address these claims and to show cause why each does not present an imminent threat of physical harm to Gorbey. ECF 9; ECF 10. The facts as established by the record before the Court are discussed more fully below.

## STANDARD OF REVIEW

### Imminent Danger

The "imminent danger" exception to § 1915(g)'s "three strikes" rule must be construed narrowly and applied only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate" to the alleged official misconduct. *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). "The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). The bar for establishing imminent danger although high, is not insurmountable.

> If limited to situations in which, say, a beating is ongoing, no prisoner will find solace; once the beating starts, it is too late to avoid the physical injury; and once the beating is over the prisoner is no longer in "imminent danger" . . . . Reading the imminent-danger language this way would make it chimerical, a cruel joke on prisoners.

*Lewis*, 270 F.3d at 531.

"[T]he exception focuses on the risk that the conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past misconduct." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir.2003). "Vague, speculative, or conclusory allegations are insufficient to invoke the exception of § 1915(g); rather, the inmate must make 'specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the

likelihood of imminent serious physical injury.'" *Johnson v. Warner*, 200 Fed. Appx. 270, 272 (4th Cir. 2006) quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) *see also Richardson v. Hite*, 53 Fed.Appx. 291 (4th Cir. Dec.23, 2002) (finding no "imminent danger" in allegation that inmate was being denied medication for his elevated cholesterol levels where inmate did not demonstrate that his cholesterol levels were necessarily dangerous or that medication was a medical necessity); *Richardson v. Joseph*, 2006 WL 1075160 (W.D.Va. April 21, 2006) (finding no "imminent danger" in allegation that doctor changed inmate's blood pressure medication without conducting a physical examination where inmate did not specify any adverse side effects he had experienced or allege facts indicating that the new medication was harmful).

## Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in

her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

It is the affirmative obligation to prevent factually unsupported claims from proceeding, coupled with the purpose of 28 U.S.C. § 1915(g) to discourage frivolous lawsuits and penalize those who file more than three such complaints that underlies this Court's decision to deny Gorbey's Motion for Reconsideration. Thus, both the imminent danger requirement and the merits of the claims asserted in light of the additional evidence provided are considered below.

## ANALYSIS

### Glaucoma treatment

Gorbey states he has "high level" glaucoma, had "serious side effects" to the medication prescribed, and from April 2018 to about October 2018, was not provided with an alternative medication to treat his glaucoma. ECF 8 at p. 2. On January 14, 2019, Gorbey claims that PA Gera prescribed the same eye-drops (latanoprost) that causes his eyes to swell and his face to break out.[3] *Id.* at p. 3. He stopped using the eye-drops because of the side effects. Another referral to optometry was made on March 4, 2019, but Gorbey claims he has not been seen. *Id.*

In response to this claim, Defendants assert that Gorbey had never been diagnosed with glaucoma "by an appropriate medical professional" at the time his complaint was filed. ECF 18-

---

[3] To the extent Gorbey attempts to raise a claim regarding "black mold" being present in the prison, that attempt fails. The black mold claim was raised and addressed in the context of another case filed by Gorbey and will not be addressed again here. *See Gorbey v.Dunbar, et al.*, Civil Action RDB-18-2754 (D. Md. 2019).

1 at 2, *see also* ECF 18-3 at 3, ¶4 (Declaration of Dr. Mohamed Moubarek). Specifically, Dr. Moubarek states that Gorbey has not been diagnosed with glaucoma by an ophthalmologist; rather Gorbey was told by an optometrist in 2014 that he had glaucoma. ECF 18-3 at 3, ¶¶4 & 10. Dr. Moubarek explains that an optometrist cannot appropriately determine if a patient suffers from glaucoma and when he became aware that the "diagnosis" was from an optometrist on April 8, 2019, Dr. Moubarek ordered an ophthalmology consultation to evaluate Gorbey. *Id*. at ¶10. That consultation took place on May 29, 2019, and resulted in the ophthalmologist declining to diagnose Gorbey with glaucoma, recommending instead further evaluation by a glaucoma specialist. *Id*. at ¶11.

Despite the impropriety of a glaucoma diagnosis provided by an optometrist, Gorbey received treatment for glaucoma after his initial medical screening at FCI Cumberland on April 23, 2018. ECF 18-3 at 3, ¶6. Lisa Hall, a nurse at the prison, ordered a continuation of Dorzolamide HCL and Timolol Maleate with directions for daily use and a refill after thirty days. *Id*. The prescriptions were refilled on May 4, 2018, for 180 days by Dr. Dankwa Vibeke and again on October 23, 2018, by Thomas Gera, Health Services Administrator. *Id*. at ¶¶ 7, 8, *see also* ECF 19 at 123 and 126 (SEALED medical records).

On January 14, 2019, Gorbey's prescription was changed to Latanoprost Ophthalmologic eye drops. ECF 18-3 at ¶9; ECF 19 at 47. On March 5, 2019, he reported an adverse reaction to this new prescription to Thomas Gera and informed him he had stopped using the eye drops because of the reaction. ECF 18-3 at ¶9. At the time Gera examined Gorbey no objective signs of a reaction were observed. *Id*. Due to the absence of any evidence supporting Gorbey's assertions that the eye drops caused a reaction, Dr. Moubarek continued the medication on April

8, 2019, with instructions to Gorbey to report to Health Services if the reaction recurred so the symptoms could be observed and documented. *Id*. at ¶10. Gorbey refused to do so. *Id*.

On August 1, 2019, Gorbey was diagnosed by a glaucoma specialist with severe glaucoma. ECF 31 at 3. The specialist recommended surgery on both eyes, beginning with Gorbey's left eye. *Id*. The surgery was approved and scheduled to occur at an outside surgery center on September 30, 2019. ECF 36-1 at ¶4 (Declaration of Alison Foote, Assistant Health Services Administrator at FCI Cumberland). As with any surgical procedure, Gorbey was provided with consent forms that required his signature before the surgery could be performed. *Id*. Defendants state, and Gorbey confirms, that Gorbey altered the consent forms before signing them. ECF 36-1 at 14-16 (altered consent forms), *see also* ECF 35 (Gorbey's Status Report).

Gorbey objected to language in the form that appeared to give his consent to "any surgery deemed necessary;" did not want to acknowledge that he understood there was a threat of death, paralysis, stroke or heart attack associated with the surgery; and did not want to consent to the use of a drug (Mitomycin C or MMC)[4] prior to surgery which Gorbey maintains causes glaucoma. ECF 35 at 1-2. After he crossed through portions he did not agree with, added statements of his own to the consent forms, and declined to consent to the use of "MMC," Gorbey claims that on September 26, 2019, Alison Foote brought new, unaltered consent forms to him for his signature and claims she demanded that he sign the forms without altering the language. *Id*. at 2. Gorbey would not agree to sign the forms as they were presented and states that no alternative medications were offered to him. *Id*. On October 1, 2019, Gorbey was placed on a transfer list and

---

[4] The description of Mitomycin C (MMC) lists as "risks and complications"

> MMC may cause blurred vision, worsened or loss of vision, ocular pain, ocular surface irritation, sensitivity to light, delayed healing, sclera or corneal melt with perforation, scarring of the conjunctiva or cornea, iritis, glaucoma, cataract, and possible need for further eye surgery.

*See* ECF 36-1 at 16.

7

subsequently transferred to an FBOP facility in South Carolina – FCI Estill. *Id.*, *see also* ECF 36-2 at 2 ("Transfer" noted for 10/1/19).

Ms. Foote explains in her declaration that when the altered consent forms were returned to Health Services, Gorbey had written on the forms that he had not been provided any alternatives to surgery, the surgery had not been fully explained to him, and he refused to use the MMC drops provided. ECF 36-1 at 3, ¶4. In response to the concerns raised by Gorbey and in light of the fact that the ophthalmologist who was going to perform the surgery would not do so unless Gorbey used the MMC drops beforehand, Health Services staff attempted to contact the ophthalmologist's office on Wednesday, September 25, 2019, to inquire about alternative procedures but could not speak with him that day. *Id.*

On Friday, September 27, 2019, Ms. Foote went to Gorbey's housing unit to speak with him about his concerns. ECF 36-1 at 3, ¶ 5. The Maryland Vision Center, the facility where Gorbey's surgery was scheduled to take place, sent the Clinical Director at FCI Cumberland new consent forms, education materials, and a form explaining patient rights and responsibilities for Gorbey to review. *Id.* at ¶6. Ms. Foote brought those materials to Gorbey to review and told him she would return with his health care provider to discuss his questions and concerns. *Id.*

Upon her return with the doctor, Ms. Foote states that Gorbey informed them he was not willing to consent to surgery if the possible complications included stroke, heart attack, paralysis or death. ECF 36-1 at 4, ¶7. Gorbey further explained that the side effects listed for MMC eyedrops made him unwilling to use the medication. *Id.* Ms. Foote recalls spending "a long period of time education [Gorbey] that there is always a possibility of side effects with any surgery but only he could make a decision to consent to the surgery, knowing that there could be a possibility of complications." *Id.* Gorbey continued to decline signing the consent forms as presented and

8

also declined to sign a refusal form acknowledging he was refusing the surgery. *Id*. Ms. Foote explained that Gorbey's refusal to sign the consent form was a refusal of the surgery and Gorbey indicated he understood. *Id*. In light of that refusal, Ms. Foote states that the possible negative consequences of refusing to undergo the eye surgery, including permanent loss of vision, were explained to Gorbey and he indicated that he understood those consequences. *Id*.

The facts as outlined above are undisputed. It is axiomatic that the imminent danger of physical harm requirement relates to some action or inaction by the subject prisoner's custodians. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (§ 1983 liability attaches only with personal participation in the constitutional violation alleged). In this case, the alleged failure to treat Gorbey's glaucoma is not due to a refusal by FBOP medical staff to treat it. While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013). Here, it is Gorbey's own choice to decline the surgical procedure that a glaucoma specialist has determined is necessary to prevent the disease from causing him to lose his eyesight; the care that was offered for this serious medical condition is adequate. While the wisdom of Gorbey's choice may be questionable, there is no indication that Gorbey is not competent to make that decision for himself. However, there has been no demonstration on this record that the course of treatment provided for Gorbey's glaucoma has either created an imminent danger to his safety, or violated his Eighth Amendment right to remain free from cruel and unusual punishment.

An Eighth Amendment claim for denial of medical care requires demonstration that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered

must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 837 (1994), aff'd in pertinent part by Sharpe v. S.C. Dep't of Corr.,* 621 F. App'x 732 (4th Cir. 2015); *see also Young v. Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). The undisputed facts establish that Defendants have attempted to address Gorbey's glaucoma through medication, referrals to specialists, and an offer of surgical intervention which he declined. Such facts warrant summary judgment in favor of Defendants on this claim.

## Shoulder injury and front-cuffing

In his complaint Gorbey states he had a medical order that was issued in 2009 requiring him to be cuffed in front of his body due to a shoulder injury. ECF 1 at 2. He claims that on January 10, 2019, Nurse Todd refused to provide a copy of the order to security staff; and on January 14, 2019, Dr. Mubarek and PA Gera also refused to provide a copy of the medical order to security staff. ECF 8 at p. 4. He further claims that Dr. Mubarek instructed security staff in the Special Housing Unit (SHU) to cuff Gorbey any way they wanted to until they figured it out. *Id*. Gorbey explains that the basis of his front-cuffing order is that he has repeatedly dislocated his shoulder and being cuffed behind his back causes him serious injury and pain. ECF 8 at p. 5; ECF 1 at p. 3.

Defendants admit that Gorbey had a valid "Medical Duty Status" or "MDS" to be cuffed in front that was in place in January of 2019 and explain it was issued by staff at another institution prior to Gorbey's arrival at FCI Cumberland. ECF 18-3 at 5, ¶12; *id*. at 18 (MDS order). Beyond that admission, however, Defendants deny ever refusing to provide Gorbey with a copy of the

10

MDS (ECF 18-3 at 5, ¶13; ECF 18-4 at 5, ¶10) and Dr. Moubarek denies the allegation that he gave correctional staff permission to cuff Gorbey any way they preferred. ECF 18-3 at 5, ¶13.

Notwithstanding the valid MDS order, Dr. Moubarek states that since his arrival at FCI Cumberland Gorbey "has not shown any signs of functional physical limitations in his shoulder as a result of any alleged traumas from the past" and there are no records that he has "suffered multiple shoulder dislocations" during his incarceration in the FBOP. ECF 18-3 at 5, ¶14. Further, Gorbey's claim that he has extensive nerve damage to his shoulders and arms is not supported by his medical record, nor is his claim of debilitating shoulder and arm pain supported by objective observation of his actions at FCI Cumberland. *Id*. at 6, ¶14. Gorbey "held a job doing general grounds maintenance and landscaping for the majority of his time at FCI Cumberland." *Id*. at 6, ¶14, and 21 (assignment roster), Dr. Moubarek relates that he has "personally witnessed [Gorbey] pushing lawn mowing machines and performing other strenuous manual labor using his shoulders, arms, and hands . . . without any complaints." ECF 18-3. at 6, ¶15.

Outside of Gorbey's bald assertion that the cuff-in-front MDS was ignored and pain was inflicted on him because of it, there is no objective evidence that he was in imminent danger of physical harm at the time he filed this complaint with regard to this allegation. Gorbey does not address this matter in his Opposition Response, *see* ECF 28, but asserts the need for discovery to oppose Defendants' motion. ECF 23 at 3-4. Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*,

637 F.3d 435, 448-49.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

The claim asserted in Gorbey's complaint is that he asked for a copy of the MDS order requiring front-cuffing, but his request was denied.  He fails to explain how that refusal, if it occurred, caused him harm.  The discovery he seeks concerns the names of officers who escorted him to the medical examination room on January 10, 2019,[5] and their statements regarding conversations they overheard between Gorbey and healthcare providers regarding front-cuffing.  ECF 23 at 4.  He asserts that this evidence would prove Defendants have made "false declarations under perjury" and that the evidence sought is "central to deciding if Gorbey was under any imminent danger at the time of filing" his complaint.  *Id*.  Assuming Gorbey did ask for the MDS order and it was not provided, there is no evidence to support his conclusion that failure to provide him with the MDS order on January 10, 2019, created an imminent risk of physical harm for him.  Absent from Gorbey's allegations are any allegations that the MDS order was never followed and harm befell him because of it.  Further, Gorbey has not explained how he was able to engage in

---

[5] As further detailed below, January 10, 2019 is the date Gorbey was found to be in an altered state and, upon searching his person, was discovered with heroin.  *See* ECF 19 at 55.

12

the physical, manual labor observed by Dr. Mubarek. *See* ECF 28. Defendants are entitled to summary judgment in their favor without providing Gorbey with the requested discovery.

## Hypoglycemia

Gorbey claims that he is hypoglycemic and suffers severe drops in blood sugar particularly between 9:30 and 10:30 a.m. ECF 8 at 6. He states that he is indigent and cannot afford to buy food in the prison commissary to use as a snack between breakfast and lunch; therefore, he believes that medical staff should provide him with such a snack in the morning pill line. *Id*. at 6-7. He claims this condition, left untreated, could cause serious injury or death, particularly if he faints and falls on the concrete floor or sidewalk. *Id*. at 7. Gorbey further states he experienced severe chest pains, but was not examined by medical staff to determine the cause. ECF 8 at 6. In Gorbey's estimation the severe chest pains he experienced are proof that he suffers severe hypoglycemia and that it warranted treatment in order to avoid serious injury. *Id*.

In his affidavit, Dr. Moubarek states that "there are no documented instances of [Gorbey] experiencing hypoglycemic episodes," nor does his record "demonstrate a history of impaired glucose regulation." ECF 18-3 at 6, ¶17. Dr. Moubarek adds that Gorbey's claim that his hypoglycemic episodes caused severe chest pains is a medically unsupported speculation. *Id*. at ¶20. During his confinement to FCI Cumberland, Gorbey never complained of symptoms indicative of a cardiac issue, nor was treatment for such symptoms withheld. *Id*. On the occasion Gorbey claimed to be experiencing a hypoglycemic episode, it was discovered that he was actually under the influence of narcotics, likely heroin, which was found in his possession at the time. *See* ECF 18-6 at 3-4, ¶¶6-9; ECF 19 at 51, 55 (sealed medical records for Jan. 10, 2019 noting tachycardia, slurred speech, elevated blood pressure, and dilated pupils prior to discovery of heroin during search of Gorbey).

A claimed medical condition for which no objective criteria has been observed by trained medical staff despite their frequent contact with Gorbey, is not a serious medical need. "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Iko*, 535 F.3d at 241). Any failure to provide treatment for Gorbey's self-proclaimed and self-diagnosed condition does not present an imminent danger of physical harm, nor does it state a viable Eighth Amendment claim.

**Failure to Protect**

This claim is leveled at Defendant Steven Eirich and is one Gorbey has raised in several of his complaints filed with this Court. He claims that Mr. Eirich allegedly told a correctional officer to tell another inmate that Gorbey informed security that the other inmate had drugs in his cell; in other words,. Eirich flagged Gorbey as a snitch. ECF 8 at pp. 6-7. Gorbey states that he "will soon be in population with this very person SIS Eirich" relayed a message to indicating Gorbey snitched on him. *Id*. Gorbey identifies the other inmate as "Big Country." *Id*. at p. 7.

As noted, Gorbey has been transferred to another facility in South Carolina, obviating any need for concern about his placement into general population with a would-be enemy at FCI Cumberland at this time. Further, there is no objective evidence to support the notion that Gorbey was in imminent danger of physical harm at the time he filed this complaint.

. Eirich denies he ever referred to Gorbey as a "rat or a snitch." ECF 18-6 at 2, ¶3. He further denies that Gorbey ever complained of being in danger, being threatened by another inmate, nor did he request protective custody or a threat assessment. *Id*. at 3, ¶4. What Eirich does recall, however, is an incident that occurred on January 10, 2019, when he was called to Health Services

14

because Gorbey refused to submit to a visual search. *Id*. at ¶5. When Eirich ordered Gorbey to submit to the search, Gorbey said "he didn't want to take off all his layers of clothing." *Id*. After a second order, Gorbey complied. *Id*.

During this encounter Eirich noticed that Gorbey was slurring his words and when he asked Gorbey if "he had ingested narcotics," he replied that his "sugar was low." *Id*. at ¶6. Eirich asked the nurse on site if this was true and he advised it was not; rather, Gorbey's blood sugar was actually a little high. *Id*. at ¶7; *see also* ECF 19 at 55. During the search of Gorbey, a "homemade smoking device was discovered" in his pocket and another staff member discovered a folded up piece of white paper containing a "small square of black paper." ECF 18-6 at 3, ¶8. Once these items were discovered, Gorbey began making threats to Eirich indicating that he files "a lot of paperwork" and that Eirich would regret locking Gorbey up because he intended "to write all of you up." *Id*. Gorbey also made statements about "things going on in the BOP" that Eirich did not know about. *Id*. When the black substance was tested it rendered a positive result for heroin. *Id*. at 4, ¶9.

In his Opposition Response, Gorbey states discovery should be provided so that phone call records can be obtained to prove that Eirich made a call to "C Unit and instructed Officer Dawson . . . to go shake down another inmate . . . while Eirich lied claiming Gorbey ratted on Country[6] on 1-10-19 at 9:30 to 9;45 AM." ECF 23 at 3, ¶4. The date of the alleged phone call matches the date Gorbey was found in possession of heroin.

Gorbey fails to demonstrate discovery is needed for this claim. "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586,

---

[6] Gorbey states the other inmate who was searched is known to him as "Big Country." ECF 23 at 3, ¶ 4.

2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rev'd on other grounds*, (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Gorbey's discovery request to obtain "an affidavit or statement" from Officer Dawson regarding the content of a phone call from Eirich to shakedown another inmate's cell appears to be a request for discovery for the sake of discovery. Gorbey's claim that Eirich called him a snitch or a rat is based on pure conjecture; he provides no objective evidence to support the claim. To the extent Gorbey was viewed as a snitch when another inmate was searched soon after Gorbey was found in possession of heroin, there are multiple possible explanations for that fact that do not include untoward conduct by Eirich. Further, Gorbey has never reported or alleged that he was threatened with violence or that following such a report to prison officials he was denied protective measures. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), *see also Rich v. Bruce*, 129 F.3d 336,

339-40 (4th Cir. 1997). In the absence of any evidence that Gorbey was denied protection from a substantial risk of harm, an Eighth Amendment claim is unsupported and Defendants are entitled to summary judgment on this claim.

### Other Claims

In his Opposition Response, Gorbey attempts to resurrect a claim that he was exposed to toxic black mold at FCI Cumberland and that, as a result, he has suffered serious skin infections. ECF 28 at 2-6. He also adds a claim that dressings applied to an infected boil have not been changed frequently enough by P.A. Gera and Vanmeter. *Id*. at 2-3. The claim is not properly raised and will not be addressed; an opposition to a dispositive motion is not the proper vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015).

### CONCLUSION

For the reasons stated herein and by separate Order which follows, the Court GRANTS Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment; and DENIES all pending motions filed by Gorbey.


　10/30/2019　　　　　　　　　　　　　　　　　　　/s/　　　　　　　　　　
Date　　　　　　　　　　　　　　　　　　　RICHARD D. BENNETT
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE